1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ZACHARY MORVANT, JEAN ANDREWS, individually and on behalf of all others similarly situated, | Case No.  11-CV-05405 YGR |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL PLAINTIFFS' INDIVIDUAL CLAIMS TO ARBITRATION** |
| vs. | |
| P.F. CHANG'S CHINA BISTRO, INC., P.F. CHANG'S III, LLC, and DOES 1 through 100, inclusive, | |
| Defendants. | |

Plaintiffs Zachary Morvant and Jean Andrews, former employees of P.F. Chang's China Bistro restaurants, bring this putative class action on behalf of all current and former P.F. Chang's China Bistro restaurant workers, for violations of the California Labor Code and other California laws.  They allege that Defendants P.F. Chang's China Bistro, Inc. and P.F. Chang's III, LLC, ("Defendants" or "P.F. Chang's") failed to provide meal and rest breaks, refused to pay for missed meal and rest breaks, failed to pay all overtime compensation due, and failed to provide accurate wage statements.

Defendants have filed a Motion to Compel Plaintiffs Zachary Morvant and Jean Andrews' Individual Claims to Arbitration on the grounds that Plaintiffs' claims are covered by the terms of P.F. Chang's dispute resolution policy, which requires employees to arbitrate any dispute arising out of their employment with P.F. Chang's.  *See* Defs.' Mot., Dkt. No. 40.

Having carefully considered the papers submitted, and the argument of counsel, and for the reasons set forth below, the Court finds that Defendants' dispute resolution policy is enforceable as against Plaintiff Andrews who must arbitrate her claims.  Defendants have not established that Plaintiff Morvant agreed to arbitrate his claims and thus, Morvant cannot be compelled to arbitrate.  Accordingly, the Court hereby **GRANTS IN PART** and **DENIES IN PART** the Motion to Compel Arbitration.

## I.      BACKGROUND

P.F. Chang's Dispute Resolution Policy requires that "any dispute arising out of or related to an Employee's employment with P.F. Chang's" must be "resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial."  Dkt. No. 42-1, Exhibit A, § 1 ("Arbitration Agreement").  The Arbitration Agreement also contains a class action waiver, which states that there "will be no right or authority for any dispute to be brought, heard or arbitrated" as a class action.  *Id.* § 4.  P.F. Chang's implemented its Dispute Resolution Policy in September of 2006.  P.F. Chang's states that all then-current employees, and all new hires going forward, were provided a copy of the Dispute Resolution Policy and required to sign and return an acknowledgement of receipt of the Dispute Resolution Policy.

The notice accompanying the Dispute Resolution Policy states "this policy applies to you" and explains that "[t]he Dispute Resolution Policy will provide all employees a quick and efficient avenue to bring forward any employment-related disputes that may arise between you and the Company."  *Id.* at 2.  It requests that the employee sign the acknowledgement form and return it to his or her supervisor.  *Id.*  The acknowledgement form states "this Policy goes into effect immediately upon [the employee's] signature below but in no event later than September 15, 2006."  *Id.* at 5.

### A.      FACTUAL HISTORY

Plaintiff Zachary Morvant worked for P.F. Chang's from early 2005 until December 26, 2006, first as a food runner and later as a bartender.  Thus, Morvant already was employed with P.F. Chang's when it implemented its Dispute Resolution Policy in September of 2006.  Defendants maintain that they would have provided Morvant with a copy of the Dispute

2

1    Resolution Policy and required him to sign and return an acknowledgement of receipt but

2    "Defendants have, as yet, been unable to locate a physical copy of Mr. Morvant's signed

3    acknowledgement."  Defs.' Reply 3, Dkt. No. 49.   Morvant explains that the reason P.F. Chang's

4    is unable to locate a signed acknowledgement is because he never signed the Arbitration

5    Agreement.  Morvant claims that he received a copy of the Arbitration Agreement but chose not

6    to sign the document because he did not want to be bound by its terms.  *See* Morvant Supp. Dec.,

7    Dkt. No. 53-1.

8    Plaintiff Jean Andrews worked as a food server for P.F. Chang's from August 26, 2008

9    through April 11, 2009.  On the date of her hire, Andrews signed P.F. Chang's Dispute

10   Resolution Policy Acknowledgement form, stating that she had received the Dispute Resolution

11   Policy, "which goes into effect immediately upon my signature."  A copy of Andrews' signed

12   acknowledgement is attached to Defendants' Motion to Compel.  *See* Dkt. No. 42-3.

13        **B.    PROCEDURAL HISTORY**

14   Plaintiff Zachary Morvant commenced this lawsuit as an individual action in the

15   Sacramento County Superior Court on December 14, 2010.  Plaintiff never served the individual

16   complaint on Defendants.  On June 17, 2011, the complaint was amended to add Jean Andrews as

17   a Plaintiff and to convert Morvant's individual action into a putative class action.  Defendants

18   were first served with this lawsuit on June 20, 2011.  Defendants filed their answer to the

19   amended complaint on July 18, 2011.  The following day, July 19, 2011, Defendants removed the

20   case to the Eastern District of California based upon the Class Action Fairness Act of 2005

21   ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), and diversity jurisdiction, 28 U.S.C. §1332(a).

22   Subsequently, on October 28, 2011, the case was transferred to the Northern District of

23   California.  Plaintiffs filed the operative, Second Amended Complaint on January 9, 2012.

24   **II.    LEGAL STANDARD**

25   The Federal Arbitration Act ("FAA'") reflects "a liberal federal policy favoring

26   arbitration" and requires federal courts to compel arbitration of any claim covered by a written

27   and enforceable arbitration agreement.  *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740,

28   1745-47 (2011) (*Concepcion*).  In ruling on a motion to compel arbitration, the court's role is

3

limited to determining whether:  (1) there is an agreement between the parties to arbitrate; (2) the claims at issue fall within the scope of the agreement; and (3) the agreement is valid and enforceable.  *Lifescan, Inc. v. Pernaier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).  If those questions are answered in the affirmative, the court must compel the parties to arbitrate their claims.  *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration").

Agreements to arbitrate are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.  9 U.S.C. § 2.  Courts must apply ordinary state-law principles in determining whether to invalidate an agreement to arbitrate.  *Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 782 (9th Cir. 2002).  Thus, arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.  *Concepcion*, *supra*, 131 S.Ct. at 1745-47.  Courts may not proceed beyond those well-established contractual defenses and employ defenses solely based on the fact that the agreement at issue is an arbitration agreement.  *Id.* at 1746-47.

## III.   DISCUSSION

The first task is to determine whether there is an agreement between the parties to arbitrate.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  As arbitration is a matter of contract, a party cannot be required to arbitrate a claim that it has not agreed to arbitrate.  *AT&T Tech., Inc. v. Communs. Workers of Am.*, 475 U.S. 643, 648-50 (1986).  In other words, the Court may not compel a party to comply with the terms of an agreement to which he or she never agreed.

### A.     ZACHARY MORVANT

The parties dispute whether Morvant agreed to arbitrate his employment related claims pursuant to the Arbitration Agreement.  Defendants have not provided a signed copy of the contract they seek to enforce.  Morvant has filed a Declaration stating that he remembers receiving the document and did not sign the document because he did not want to be bound by its terms.  Morvant argues that he did not agree to arbitrate because he did not sign an Arbitration

1    Agreement.  Defendants argue that Morvant did not need to sign the Arbitration Agreement in

2    order to be bound by its terms.  According to Defendants, "[a]ll California employees were

3    deemed to be subject to P.F. Chang's Dispute Resolution Policy if they continued their

4    employment with P.F. Chang's after the September 2006 policy distribution and

5    implementation."  Defs.' Mot. 5.

6           While a party's acceptance of an agreement need not be explicit, "[a]s a general rule,

7    silence or inaction does not constitute acceptance of an offer."  *Circuit City Stores, Inc. v. Najd*,

8    294 F.3d 1104, 1109 (9th Cir. 2002).  An employee's continued employment has been found to

9    constitute implied acceptance of the changed terms of employment where the employee was

10   informed that his or her continued employment would constitute acceptance of those changed

11   terms.  Although Defendants contend continued employment constitutes acceptance, the

12   decisional law they cite to support this proposition is distinguishable.  In *Kruzich v. Chevron

13   Corp.*, the employer's dispute resolution policy requiring arbitration expressly stated that "[a]n

14   employee's continued employment in Chevron will mean they agree to use [the dispute resolution

15   policy]."  2011 WL 6012959, at *4 (N.D. Cal. Dec. 1, 2011).  Because the employee plaintiff

16   continued his employment, the court found that he had agreed to be bound by the arbitration

17   agreement.  Defendants also cite *Doubt v. NCR Corp.*, where the employer sent an email to

18   employees explaining that acceptance of the agreement to arbitrate would be demonstrated by an

19   employee's continued employment.  2010 WL 3619854, at *3 (N.D. Cal. Sep. 13, 2010).  Again,

20   because the employee plaintiff continued his employment, the court found that he had agreed to

21   be bound by the arbitration agreement.  In *Hicks v. Macy's Dep't Store, Inc.*, the employer

22   instituted a voluntary binding arbitration program to which the employee plaintiff was bound

23   unless he opted out.  2006 WL 2595941, at *1-3 (N.D. Cal. Sep. 11, 2006).  The employee

24   plaintiff's failure to turn in an "opt-out" form was deemed acceptance of the changed terms of

25   employment.  *Id*.

26          In support of their motion, the Defendants point to language in the cover letter that

27   accompanied the Arbitration Agreement, which provides that the Dispute Resolution Policy "goes

28   into effect on September 15, 2006," and "this policy applies to you."  *Id*.; Reply 5 (citing

Arbitration Agreement).  Nothing in the Arbitration Agreement or accompanying material expressly states that continued employment will constitute acceptance of the terms of the Dispute Resolution Policy, *see Kruzinich* and *Doubt*, *supra*, and Defendants do not assert that Morvant agreed to arbitrate because he failed to affirmatively opt-out, *see Hicks*, *supra*.  Given the facts of the instant case, continued employment does not prove acceptance of the terms of the Arbitration Agreement.[1]

Based on the foregoing analysis, the Court finds that Defendants have not met their burden to establish that they entered into an agreement with Morvant to arbitrate his claims.  Accordingly, the Court cannot compel Morvant to arbitrate his claims.

### B.    JEAN ANDREWS

As to Andrews, the parties agree that Andrews and P.F. Chang's entered into an Arbitration Agreement and that the claims at issue here are covered by the terms of that Arbitration Agreement.  The parties dispute whether the terms of the Arbitration Agreement, particularly the class action waiver, render the agreement unenforceable as unconscionable or contrary to public policy.

To be unenforceable as unconscionable, a contract must be both procedurally and substantively unconscionable.  *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (Cal. 2000).  Procedural unconscionability concerns the manner in which the agreement was negotiated, while substantive unconscionability concerns the terms of the agreement itself.  Both elements of unconscionability must be present to render a contract unenforceable, but they need not be present in the same degree.  *Id.*  "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Id.*; *see also Olvera v. El Pollo Loco, Inc.*, 173 Cal. App. 4th 447, 454 (Cal. Ct. App. 2010).  Plaintiffs argue that the agreement is both

---

[1] In the remaining cases that Defendants cite, the employee plaintiffs were at-will employees.  In California, "as a matter of law, an at-will employee who continues in the employ of the employer after the employer has given notice of changed terms or conditions of employment has accepted the changed terms and conditions."  *See DiGiacinto v. Ameriko-Omserv Corp.*, 59 Cal. App. 4th 629, 635 (Cal. Ct. App. 1997).  As Defendants do not provide evidence, let alone argue that Morvant was an at-will employee, these cases also do not support a finding that Morvant's continued employment constitutes acceptance of the terms of the Arbitration Agreement.

procedurally and substantively unconscionable and is therefore invalid and unenforceable.

### 1.     *Procedural Unconscionability*

Procedural unconscionability concerns the manner in which an agreement is negotiated, and is present if a contract is the product of oppression or surprise. *Armendariz, supra*, 24 Cal. 4th at 114.  A contract is the product of oppression if it is a contract of adhesion, one in which there was an inequality of bargaining power denying the weaker party the opportunity to negotiate the terms of the contract. *Id.* at 113.  "[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." *Id.* at 115.  Plaintiffs argue that the Arbitration Agreement is adhesive because it was offered on a take-it-or-leave-it basis as a condition of employment with no opportunity to negotiate.

Additionally, Plaintiffs argue that the Arbitration Agreement has the element of unfair surprise because it does not put an employee on notice that he or she is agreeing to arbitration. Plaintiffs argue that the form of the Arbitration Agreement, titled "Dispute Resolution Policy," is confusing because (1) it contains no reference to the fact that the policy applies to the employee; (2) the class waiver is "confusingly worded"; and (3) the class waiver is "buried in the longest paragraph, . . . not set out in bold or capital typeface."  Even a cursory review of the Arbitration Agreement reveals that the arbitration provisions are not hidden and thus, there was no unfair surprise about the terms to the Arbitration Agreement.  First, the memo provided with the Arbitration Agreement states: "this policy applies to you," and the Arbitration Agreement itself states: "[t]his Policy applies to any dispute arising out of or related to an Employee's employment with P.F. Chang's."  Thus, Plaintiffs' argument that an employee would not know to whom this policy applies is unpersuasive.  Second, the class waiver language is fairly straightforward.  The waiver states that the employee may not bring "a class or collective action," or "participate in a class, representative or collective action."  Third, the class waiver is not "buried" in a long paragraph, but rather, the class waiver is set out in the last two sentences of a six sentence

paragraph.

However, agreeing to arbitration was apparently a condition of employment, and was presented on a take-it-or-leave-it basis.  Thus, Plaintiffs have demonstrated at least some amount of procedural unconscionability due to the adhesive nature of the Arbitration Agreement.

### 2.   *Substantive Unconscionability*

Substantive unconscionability concerns the terms of the Arbitration Agreement and whether those terms are overly harsh or one-sided.  *Armendariz*, *supra*, 24 Cal. 4th at 114.  The first consideration turns on whether there is a "modicum of bilaterality."  There is no suggestion that the agreement to arbitrate lacks mutuality.

The second consideration looks to the integrity of the arbitration proceeding to ensure the employee effectively may vindicate his or her statutory cause of action in the arbitral forum.[2]  Here, Plaintiffs argue that the class action waiver is substantively unconscionable because it interferes with the vindication of substantive statutory rights.

### a)   *The Supreme Court's Concepcion decision*

At the heart of the issue of substantive unconscionability is the applicability to this dispute of the Supreme Court's decision in *Concepcion*.  Prior to *Concepcion*, the controlling California authority concerning class action waivers was *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (Cal. 2005).  There, the California Supreme Court analyzed the FAA, as well as state law principles of unconscionability to determine whether to enforce an arbitration agreement containing a class action waiver:

> when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then . . . the waiver becomes in practice the exemption of the party "from responsibility for [its] own fraud, or willful injury to the person or property of another."  Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

*Discover Bank*, *supra*, 36 Cal. 4th at 162.

---

[2] Other considerations include whether there is a neutral arbitrator, more than minimal discovery, a written award, and it requires the employee, as a condition of access to the arbitral forum, to pay unreasonable costs, arbitrator's fees, or expenses.

1   *Concepcion* overruled *Discover Bank*. *Concepcion*, *supra*, 131 S.Ct. 1740. In

2   *Concepcion*, the Supreme Court analyzed a consumer phone services contract that included an

3   arbitration provision and a class-action waiver. *Id.* at 1744. The Court in *Concepcion* started

4   from the principle that the FAA was enacted to reflect "both a liberal federal policy favoring

5   arbitration and the fundamental principle that arbitration is a matter of contract." *Id.* at 1745

6   (internal citations and quotations omitted). The Court's ruling in *Concepcion* followed from its

7   earlier decisions in *Southland v. Keating*, 465 U.S. 1, 10 (1984) and *Perry v. Thomas*, 482 U.S.

8   483, 492 n.9 (1987), where it held that state statutes or judicial rules treating agreements to

9   arbitrate in a different manner from other agreements were impermissible under the FAA.

10   *Concepcion* held that arbitration agreements are to be enforced "according to their terms."

11   *Concepcion, supra,* 131 S.Ct. at 1748 (internal citations omitted). While the FAA permits certain

12   contract-based defenses to enforcement, "defenses that apply only to arbitration or that derive

13   their meaning from the fact that an agreement to arbitrate is at issue" are not permitted. *Id.* at

14   1747-48. Accordingly, *Concepcion* abrogated the "*Discover Bank* rule," because it "interfere[d]

15   with fundamental attributes of arbitration and thus create[d] a scheme inconsistent with the

16   FAA." *Id.* at 1747-48. Defendants argue that in light of *Concepcion*, the existence of such a

17   class action waiver in the Arbitration Agreement poses no impediment to its enforcement.

18       *b)   Concepcion applies with equal force to employment agreements*

19   Plaintiffs attempt to distinguish *Concepcion* to avoid enforcement of the

20   Arbitration Agreement. They argue that *Concepcion* was in the consumer context and left

21   undisturbed California Supreme Court precedent on the enforceability of class action waivers in

22   the employment context. *See Gentry v. Superior Court*, 42 Cal. 4th 443, 463 (Cal. 2007)

23   ("*Gentry*"). Plaintiffs contend that because different substantive legal rights are at issue in

24   employment agreements than consumer contracts, courts must view class waivers in the

25   employment context with particular scrutiny. Pls.' Opp'n 8. Moreover, Plaintiffs argue that

26   because *Gentry* rests on policy concerns stemming from employees' statutory rights not

27   addressed in *Concepcion*, it did not overrule *Gentry*.

28

9

Plaintiffs argue that the validity of the class arbitration waiver must be analyzed using the factors set forth in *Gentry*: "'the modest size of the potential individual recovery, the potential for retaliation against members of the class, the fact that absent members of the class may be ill informed about their rights, and other real world obstacles to the vindication of class members' rights to overtime pay through individual arbitration.'" Pls.' Opp'n 9 (quoting *Gentry*, 42 Cal. 4th at 463).  If class action waivers in arbitration agreements are enforced, Plaintiffs argue, it would make it too difficult and expensive for individual employees to pursue claims for wage violations.  Pls.' Opp'n 8-10 (citing *Gentry*, *supra*, 42 Cal. 4th at 456, 459).  Moreover, they argue that the ability to bring a collective action may be necessary to ensure that the labor laws are enforced, particularly because many workers are unaware of their legal rights or fear retaliation by their employers for asserting those rights.  *Id.* 10-11 (citing *Gentry*, *supra*, 42 Cal. 4th at 461).  Thus, Plaintiffs argue that class action waivers in employment agreements are unenforceable because they impermissibly interfere with an employee's ability to vindicate these statutory rights.  *Id.*

Here, the Court can find no principled basis to distinguish between *Discover Bank*, which was expressly overruled in *Concepcion*, and *Gentry*.[3]  Each decision looked to the modest size of individuals' potential recovery, unequal knowledge and bargaining power in the contractual relationship, and "other real world obstacles" to vindication of the individuals' rights.  *Compare Discover Bank*, *supra*, 36 Cal. 4th at 162 *with Gentry*, *supra*, 42 Cal. 4th at 463.  *Concepcion* was clear that in abrogating the *Discover Bank* rule it was rejecting the California Supreme Court's reasoning that:

> [W]hen the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then . . . the waiver

---

[3]  This conclusion is in line with this Court's recent decision in *Jasso v. Money Mart Express, Inc.*, 2012 WL 1309171 (N.D. Cal. Apr. 13, 2012), as well as other district courts in California that have examined the question of *Concepcion*'s applicability to class action claims in employment cases.  *See, e.g., Lewis v UBS Fin'l*, 818 F. Supp. 2d 1161 (N.D. Cal. 2011); *Quevedo v. Macy's Inc.*, 798 F. Supp. 2d 1122 (C.D. Cal. 2011); *Valle v. Lowe's HIW, Inc.*, 2011 WL 3667441 (N.D. Cal. Aug. 22, 2011); *Murphy v. DirecTV, Inc.*, 2011 WL 3319574 (C.D. Cal. 2011); *Morse v. ServiceMaster Global Holdings, Inc.,* 2011 WL 3203919 (N.D. Cal. Jul. 27, 2011).

1    becomes in practice the exemption of the party "from responsibility for [its]
     own fraud, or willful injury to the person or property of another."

2        131 S.Ct. at 1746 (quoting *Discover Bank*, *supra*, 36 Cal. 4th at 162) (internal citations

3    omitted, alteration in original).

4        While the Court in *Concepcion* may not have taken into account the potential for

5    retaliation when there is an ongoing employment relationship between the parties, it did consider

6    other important public policy concerns regarding fraud and willful injury to consumers.  The

7    failure to address employment retaliation alone does not permit a departure from *Concepcion's*

8    broad statement that the FAA prohibits state-law created barriers to arbitration.  "When state law

9    prohibits outright the arbitration of a particular type of claim, the analysis is straightforward:  The

10   conflicting rule is displaced by the FAA."  *Id*. at 1747 (citing *Preston v. Ferrer*, 552 U.S. 346,

11   353 (2008)).

12       Moreover, to the extent that *Gentry*'s holding rested on the principle that a class waiver

13   should be unenforceable where the amounts at issue in the claims and the expense of prosecuting

14   the claims would effectively preclude vindication of statutory rights, that argument has been

15   soundly rejected by the Ninth Circuit's subsequent decision in *Coneff v. AT&T Corp.*, based upon

16   a reading of the "broadly written" language of *Concepcion*.  673 F.3d 1155, 1158 (9th Cir. 2012).

17   As the Ninth Circuit noted in *Coneff*, the majority in *Concepcion* rejected the argument that

18   precluding collective claims decreases effective enforcement, and therefore deterrence, because

19   the small size of individual claims is worth much less than the cost of litigating them or are

20   insufficient to give individual consumers incentive to bring them.  *Id*. at 1159.  The Ninth Circuit

21   read *Concepcion* to hold that "[s]uch unrelated policy concerns, however worthwhile, cannot

22   undermine the FAA."  *Id*. (citing *Concepcion*, *supra*, 131 S.Ct. at 1753).  This Court cannot do

23   other than read the *Concepcion* decision the same way.  Thus, Plaintiffs' effort to distinguish

24   *Concepcion* on this basis fails.

25       As such, Plaintiffs' argument that the presence of the class action waiver renders the

26   Arbitration Agreement substantively unconscionable is unavailing.  Because this was Plaintiffs'

27   sole basis for the Court to find the Arbitration Agreement substantively unconscionable, the Court

28

1    concludes that the Arbitration Agreement is not unconscionable.  Therefore, the Court will not

2    hold the Arbitration Agreement unenforceable on this ground.

3        **C.    PUBLIC POLICY**

4        Based on the National Labor Relations Board's ("NLRB") decision in *D.R. Horton Inc.,*

5    357 N.L.R.B. No. 184, 2012 WL 36274 (January 3, 2012),[4] Plaintiffs argue that class waivers in

6    employment agreements are prohibited by the National Labor Relations Act ("NLRA").  In *D.R.*

7    *Horton*, the NLRB considered whether an employer violates the NLRA when it requires an

8    employee to sign an agreement precluding class or collective claims concerning their

9    employment.  The NLRA makes it an unfair labor practice for an employer to interfere with an

10   employee's right "to engage in . . . concerted activities for the purpose of collective bargaining or

11   other mutual aid or protection."  29 U.S.C. §§ 157, 158.  Relying on numerous NLRB and

12   Supreme Court decisions interpreting the NLRA, the NLRB held that the requirement of a class

13   action waiver as a condition of employment is an unfair labor practice under the NLRA and

14   violates Section 7 of the NLRA, 29 U.S.C. §157.[5]  The NLRB found that the employer's

15   agreement, by barring class and collective claims, "directly violates the substantive rights vested

16   in employees by Section 7 of the NLRA," because such an agreement precludes collective or

17   representative claims by employees, which impermissibly interferes with those employees' rights

18   to engage in concerted activity for mutual aid or protection.  *D.R. Horton, supra*, at * 12.

19       Plaintiffs argue that this Court should refuse to enforce an arbitration agreement that

20   includes a class action waiver provision because to do so would be enforcing an agreement that is

21   forbidden by the NLRA.  Their analysis starts with the FAA's savings clause, which provides that

22   agreements to arbitrate may be invalidated "on such grounds as exist at law or in equity for the

23   revocation of any contract."  9 U.S.C. § 2.  One such ground that "exist[s] at law or in equity for

24   the revocation of any contract" is where a contract is contrary to public policy.  Thus, Plaintiffs

25   ⁴ Pinpoint citations are to Westlaw.

26   ⁵ Defendants argue that the *D.R. Horton* decision is not entitled to any deference because it was decided in
     a procedurally improper posture, without a quorum of three members, and because decisions by the NLRB
27   are not self-enforcing.  Defs.' Supp. Br. 2.  While the NLRB's decision is not binding upon this Court, the
     Supreme Court authority cited in the decision plainly is.  In that respect, Defendants argue that *D.R.*
28   *Horton* misreads and misapplies these Supreme Court decisions.

argue, if an agreement to arbitrate requires an employee to waive the right to engage in collective activity as a condition of employment, then the agreement constitutes an unfair labor practice under the NLRA, is contrary to public policy and under the FAA, such an agreement cannot be enforced by a court.  Pls.' Supp. Br. 5.

Defendants argue that the NLRA is not a bar to enforcement of agreements to arbitrate non-NLRA claims on an individual basis.  The Court agrees.  *Concepcion* articulates a strong federal policy choice in favor of enforcing arbitration agreements and thereupon holds that class waiver provisions should not be stricken or be grounds to render entire agreements unenforceable. The Court in *Concepcion* stated that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Concepcion*, *supra*, 131 S.Ct. at 1748.  The Court then emphasized that the FAA is meant to ensure enforcement of the terms of arbitration agreements, including terms that limit "with whom a party will arbitrate its disputes." *Id.* at 1749, citing *Stolt-Nielsen* at 1773.  In short, *Concepcion* holds that collective arbitration is contrary to the purposes of the FAA and thus the FAA requires not just compelling arbitration, but compelling arbitration *on an individual basis* in the absence of a clear agreement to proceed on a class basis.

### 1.    Norris-LaGuardia Act

In *D.R. Horton*, the NLRB relied, not just the on NLRA, but also the Norris-LaGuardia Act, 29 U.S.C. §§ 102 *et seq.*, a statute that restricts the power of federal courts to issue injunctions to prohibit certain activities.  Under the Norris-LaGuardia Act, specific acts not subject to restraining order or injunction include "aiding any person participating or interested in any labor dispute who . . . is *prosecuting, any action or suit* in any court." *D.R. Horton*, *supra*, at *7 (quoting 29 U.S.C. § 104(d) (emphasis in original)).  The NLRB looked at the policy underlying the Norris-LaGuardia Act, which observes that "the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore . . . it is necessary that he have full freedom of association . . . and that he shall be free from the interference, restraint, or coercion of employers . . . in other concerted activities for . . . mutual aid or

13

1   protection." 29 U.S.C. § 102. According to the NLRB, contracts in conflict with this policy are

2   not enforceable in any court and cannot form the basis of legal or equitable relief. *D.R. Horton*,

3   *supra*, at *7 (citing 29 U.S.C. § 103). The NLRB concluded that "an arbitration agreement

4   imposed upon individual employees as a condition of employment cannot be held to prohibit

5   employees from pursuing an employment-related class, collective, or joint action in Federal or

6   State court." *Id*. at *8.

7          Plaintiffs argue that the Arbitration Agreement directly conflicts with the Norris-

8   LaGuardia Act's policy against interference by an employer with an employee's right to engage

9   in collective activity. Further, they argue that the Norris-LaGuardia Act prevents this Court from

10  enforcing the Arbitration Agreement because it conflicts with the public policy articulated in the

11  Norris-La Guardia Act. Thus, they argue that enforcement of the class action waiver is barred by

12  the Norris-LaGuardia Act and therefore unenforceable under the FAA.

13         Defendants counter that the NLRB is not charged with administering the Norris-

14  LaGuardia Act and to the extent the NLRB interprets a statute other than the NLRA, its

15  interpretation is not entitled to any deference. Defs.' Supp. Br. 2. Additionally, Defendants argue

16  that the NLRB's – and Plaintiffs' – interpretation of the Norris-LaGuardia Act is "patently

17  wrong." *Id*. at 6. According to Defendants, the Norris-LaGuardia Act specifically applies only to

18  "yellow-dog" contracts – contracts not to join a union or to quit employment if one joins a union.

19  Defendants argue that nothing in the Norris-LaGuardia Act prevents courts from enforcing other

20  types of contracts, including arbitration agreements. *See id*. at 7 (citing *Local 205 v. Gen. Elec.

21  Co.*, 233 F.2d 85, 90 (1st Cir. 1956) ("[I]t is our conclusion that jurisdiction to compel arbitration

22  is not withdrawn by the Norris-LaGuardia Act.")). Thus, Defendants assert, because neither the

23  Arbitration Agreement at issue in this case nor the arbitration agreement at issue in *D.R. Horton*

24  were "yellow-dog" contracts, the Norris-LaGuardia Act does not apply.

25         The Court agrees that the Norris-LaGuardia Act does not bar enforcement of the

26  Arbitration Agreement. While the NLRB's interpretation of the NLRA should be given some

27  deference, its interpretation of other federal statutes is not. *See Hoffman Plastic Compounds, Inc.

28  v. NLRB*, 535 U.S. 137, 144 (2002) (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 527-534,

529, n. 9 (1984) ("While the Board's interpretation of the NLRA should be given some deference, the proposition that the Board's interpretation of statutes outside its expertise is likewise to be deferred to is novel")).  Additionally, the Norris-LaGuardia Act specifically defines those contracts to which it applies.  29 U.S.C. § 103(a), (b).  An agreement to arbitrate is not one of those contracts to which the Norris LaGuardia Act applies.

### 2.      Conflict between FAA and NLRA

The NLRB in *D.R. Horton* indicated that its decision did not create a conflict between the FAA and the NLRA or the FAA and the Norris-LaGuardia Act.  According to Plaintiffs, so long as the NLRA and Norris-La Guardia Act treat agreements to arbitrate no differently than any other agreement, there is no conflict with the FAA.  Plaintiffs argue that the NLRA and Norris-La Guardia's prohibitions on class waivers in arbitration agreements apply only if employers seek to prevent their employees from engaging in collective action and thus, are not targeted at arbitration agreements generally.  The NLRB reached this same conclusion in *D.R. Horton* after interpreting the FAA and the Norris-LaGuardia Act to resolve a conflict between those two statutes, and between the FAA and the NLRA.  Defendants argue that because the NLRB does not administer the FAA or the Norris-LaGuardia Act, neither the NLRB's accommodation of the FAA, nor its interpretations of the FAA and Norris-LaGuardia Act are entitled to deference.

### 3.      Whether arbitration prevents vindication of substantive rights

In *D.R. Horton*, the NLRB read *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) to hold that the NLRB does not need to enforce class and collective arbitration waivers where an arbitration agreement would cause a party to "forego the substantive rights afforded by the statute" and that agreements to arbitrate non-NLRA claims on an individual basis fall within this exception because they would deprive individuals of their rights under Section 7 of the NLRA.  *D.R. Horton*, *supra*, at *9 (quoting *Gilmer*, *supra*, 500 U.S. at 26).  Defendants argue that the NLRB misconstrues the *Gilmer* exception, which provides an arbitration agreement cannot require a party to forego the substantive rights afforded by the statute under which the plaintiff brings suit, not *any* statute.  Defendants note that this is not an unfair labor practices case

15

brought under the NLRA.  Defendants assert that Plaintiffs' claims are under California law, and there is no suggestion that the Plaintiffs will not be able to vindicate their substantive rights under California law in the arbitral forum.

Additionally, Defendants argue that *Gilmer* made clear that proceeding as a class or collective action was a procedural, not a substantive right falling within the *Gilmer* exception: "[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."  500 U.S. 20, 26 (1991) (quoting *Mitsubishi Motors Corp.*, *supra*, 473 U.S. at 628) (internal quotations omitted).  Thus, Defendants assert, agreements to arbitrate non-NLRA claims on an individual basis do not require employees to forego substantive rights.  The Court in *Gilmer* went on to declare that the plaintiff's employment claims under the Age Discrimination in Employment Act ("ADEA") must be arbitrated "even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator."  *Id.* at 32.  Although decided under the ADEA, this Court finds no reason that the *dicta* in *Gilmer* would not apply with equal force to other non-NLRA claims.

### 4.    Preemption

Plaintiffs also attempt to distinguish *Concepcion* by arguing that *Concepcion* involved preemption analysis, where, here, the Court is asked to consider federal statutes such that preemption of state law is not at issue.  While *Concepcion* was focused on preemption analysis and whether a state could establish a rule contrary to the FAA, its statement of the meaning and purposes of the FAA applies equally in the context of determining which federal statute controls here.  Moreover, the Supreme Court's post-*Concepcion* decision in *CompuCredit v. Greenwood*, 132 S.Ct. 665, 668-69 (2012), held that, absent a clear statement in a federal statute showing Congressional intent to override the use of arbitration, the FAA prevails.  *Id.* at 669.  This is so even if the federal statute provides a "right to sue" and states that any waiver of rights "shall be treated as void."  *Id.* at 670-71.  *CompuCredit* held that courts are required to enforce agreements to arbitrate according to their terms, "unless the FAA's mandate has been 'overridden by a contrary congressional command.'"  *Id.* (quoting *Shearson/American Express*

*Inc. v. McMahon*, 482 U.S. 220, 226 (1987)).  Because Congress did not expressly provide that it was overriding any provision in the FAA when it enacted the NLRA or the Norris-La Guardia Act, the Court cannot read such a provision into either Act and must enforce the parties' Arbitration Agreement according to its terms.

While the NLRB's analysis in *D.R. Horton*, makes a somewhat compelling argument that agreements that require employees to submit to individual arbitration should not be enforced as against public policy, that reasoning does not overcome the direct, controlling authority holding that arbitration agreements, including class action waivers contained therein, must be enforced according to their terms.  As the Ninth Circuit recently stated in *Coneff*, *supra*, "[e]ven if we could not square *Concepcion* with previous Supreme Court decisions, we would remain bound by *Concepcion*, which more directly and more recently addresses the issues . . . in this case."  637 F. 3d at 1159 (citing *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.").  As a result, the inclusion of a class action waiver provides no basis to hold the Arbitration Agreement unenforceable as contrary to public policy.

### D.   PAGA WAIVER IN ARBITRATION AGREEMENT

In addition, Plaintiffs argue that because the class waiver provision prevents Plaintiffs from acting as private attorneys general, it violates California's Private Attorney General Act ("PAGA"), Cal. Labor Code §§ 2698 *et seq.*, which renders the Arbitration Agreement illegal and unenforceable.  This argument is based on the "*Broughton-Cruz*" rule that prohibits arbitration of claims for public injunctive relief.  *See Broughton v. Cigna Healthplans of Calif.*, 21 Cal. 4th 1066 (Cal. 1999) and *Cruz v. PacifiCare Health Systems, Inc.*, 30 Cal. 4th 303 (Cal. 2003). Plaintiffs cite post-*Concepcion* cases in which state and federal district courts in California have invalidated arbitration agreements with PAGA waivers on the basis of unconscionability.  *See* Pls.' Opp'n 11-12.  In *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 951 (9th Cir. 2012), the Ninth Circuit recently addressed this precise issue:  whether, in light of *Concepcion*, the FAA

preempts California's state law rule prohibiting the arbitration of claims for broad, public injunctive relief. The Ninth Circuit held that "[t]he FAA preempts California's *Broughton-Cruz* rule that claims for public injunctive relief cannot be arbitrated." *Id.* at 965. Thus, the Court must enforce the parties' Arbitration Agreement even if this might prevent Plaintiffs from acting as private attorneys general.[6]

### E.   WAIVER OF RIGHT TO ARBITRATE

Finally, the Court will address Plaintiffs' argument that Defendants somehow "waived" their right to arbitrate. A party seeking to prove waiver of a right to arbitration must show: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir. 1986). Because waiver of a contractual right to arbitration is not favored, "any party arguing waiver of arbitration bears a heavy burden of proof." *Id.* Plaintiffs have not met that burden.

Plaintiffs argue that invoking CAFA as the basis for removal is conduct inconsistent with the intent to arbitrate, and that Plaintiffs have been prejudiced by the delay in the proceedings. Neither argument is persuasive. Plaintiffs argue that removal pursuant to CAFA is logically irreconcilable with the intent to arbitrate based upon an erroneous assumption that such removal amounts to an admission that this action is suitable to class treatment. Pls.' Opp'n 5. Defendants invoked CAFA because the allegations in the Plaintiffs' First Amended Complaint met the statutory criteria for removal. *See* Notice of Removal, Dkt. No. 1. Removal does not serve as an admission of those allegations. *See* Defs.' Reply 1, n.1 ("P.F. Chang's vigorously disputes Plaintiffs' baseless allegations"). Additionally, removal prior to compelling arbitration is neither uncommon nor inconsistent with the right to arbitrate.

Plaintiffs also argue that Defendants have taken "full advantage of numerous procedural tools available only through the court system."[7] Plaintiffs have not identified any procedural tool

---

[6] As Defendants point out in their Reply, Plaintiffs have not asserted a claim for injunctive relief on behalf of the public or otherwise.

[7] As an aside, both parties accuse the other side of forum shopping. Defendants argue that Plaintiffs forum shopped by filing this action in the wrong jurisdiction. According to Defendants, Plaintiffs' counsel

the Defendants have used.  Other than removal and change of venue, the Court is not aware of any procedural tools available only through the court system that Defendants have used.

Mere delay cannot constitute the prejudice necessary to waive a party's right to arbitrate the dispute.  Where courts have found prejudice from delay, the parties had engaged in extensive discovery, or the case was in the verge of trial and the parties had engaged in significant trial preparation.  The parties have not engaged in any discovery and have no plans to engage in discovery prior to the Court deciding the arbitration issue.  Simply removing the case to federal court and transferring the case to the appropriate venue before moving to compel arbitration has not imposed any costs on Plaintiffs that could not have been avoided by filing the case in the Northern District of California in the first place.  The delay Plaintiffs complain of – waiting seven months while the case was transferred – is about the same duration Plaintiffs waited before serving the Defendants with the complaint and is a significantly shorter period than the four years Morvant waited before filing this lawsuit.  Indeed, an email attached to Plaintiffs' opposition brief demonstrates that no later than June 30, 2011, Defendants asked Plaintiffs to submit their claims to arbitration.   No waiver of arbitration can be found from these facts.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Compel Arbitration.

The Court **GRANTS** Defendants' Motion to Compel Arbitration as to Plaintiff Jean Andrews.

The Court **DENIES** Defendants' Motion to Compel Arbitration as to Plaintiff Zachary

voluntarily dismissed a near identical putative class action that was before Judge Alsup in the Northern District of California prior to filing this action in the Sacramento Superior Court.  Defendants argue that this forced them to remove the case and transfer it to the Northern District.

Plaintiffs argue that these same acts by Defendants – *i.e.*, removal, transfer, and now moving to compel the arbitral forum – constitute forum shopping.  Plaintiffs also point out that the case has now been before five judges, which they suggest is judge shopping.  The chronology is as follows:  the case was originally filed in the Sacramento Superior Court where it was assigned to a Superior Court Judge; after the case was removed to the Eastern District of California, it was assigned to Judge Morrison C. England, Jr.; the case was then transferred to the Northern District of California, where it was assigned to Magistrate Judge Donna Ryu; P.F. Chang's declined to consent to a magistrate judge, after which the case was reassigned to Judge Claudia Wilken; and finally, the case was one of over 300 cases automatically (and randomly) assigned to the undersigned after appointment to the federal bench.

Morvant.

This Order Terminates Docket Number 40.

**IT IS SO ORDERED.**

Dated: May 7, 2012

_____

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**